# Quein *versus* Smith.

1. Recording an assignment of a mortgage is not necessary as against one who has actual notice thereof.

2. An officer of a building association who knows that it is insolvent, cannot discharge his indebtedness to it with stock held by him.

3. A solvent building association may assign a mortgage in payment of or as collateral for a debt; and in an action on a mortgage assigned as collateral for the payment of an order given to a member of the association on his withdrawal, it is unnecessary to determine whether the consent of the directors to such assignment is legal under section 2 of the Act of April 12th, 1859, which provides that at no time shall more than one half of the funds in the treasury be applicable to the demands of withdrawing stockholders without the consent of the board of directors.

4. A building association assigned to a withdrawing stockholder as collateral for the payment of the money to which he was entitled on such withdrawal a mortgage given by another member of the association. The agreement was that the association was to continue to receive all the interest, etc., thereof, which, after the payment of prior claims, was to be applied to the claims of the assignee. The mortgagor having become treasurer paid off the mortgage with stock held by him.

*Held*, in a scire facias on the mortgage, that it was error to charge the jury that the payment was invalid if the mortgagor knew of the assignment; that it was not error to charge that it was invalid if the mortgagor knew of the insolvency of the association.

January 13th, 1885. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ. CLARK, J. absent.

ERROR to the Court of Common Pleas No. 1, of *Philadel-phia county:* Of January Term 1884, No. 275.

Scire facias sur mortgage, by R. Rundle Smith Assignee of the William H. Taylor Building Association against Joseph Quein, on a mortgage made by Quein to the building association, and by it assigned to the plaintiff.

On the trial, before PEIRCE, J., the following facts appeared: The mortgage in suit was given December 31st, 1874; to secure a loan of $1500 to Quein upon seven and a half shares of stock of the association held by him, and conditioned for the payment of $7.50 per month as interest and for the monthly contribution of $7.50 on Quein's seven and a half shares of stock with the proviso that in case of six month's default in the said payments the whole principal debt should become due and payable. Smith (the plaintiff) and S. J. Christian were also stockholders in the building association and in the early part of 1879 withdrew their stock, each receiving an order from the association dated April 3d, 1879, Nos. 300 and 301 for $2498. The orders were not paid and Smith threatening to bring suit for himself and Christian, unless payment was made or secured, the association on July 1st, 1880 assigned to Smith as security the mortgage in question, with others. Smith executed an agreement with the association, under date of July 12th, 1880, in which it was stipulated that the assignment " although absolute is made upon the conditions . . . . . that all the income derived from said four mortgages together with one half of all the income derived from any other source shall be applied" to the payment of said orders on or before May 6th, 1881; the mortgages to be re-assigned upon such payment and the treasurer of the association to furnish monthly statements to Smith of receipts and disbursements, in order to show how the agreement was being carried out. Smith did not place the assignment on record until May 12th, 1881. Upon January 6th, 1881, Quein the defendant was elected treasurer of the association as appeared from the minutes offered in evidence. Upon February 7th, 1881, a meeting of the board was held at which Quein, as shown by the minutes, expressed his desire of paying off his loan. On motion, it was agreed to " and as the mortgages were held by Smith the secretary was directed to give Mr. Quein a copy of the statement of his account signed by the secretary and with the seal of the association affixed, to be held by them until the society could get the mortgages released and satisfy the same." The settlement was made by Quein and he paid off the mortgage with what stock he already had and other stock he had purchased three months previously at a discount of 25 per cent. A certificate of this payment was given, dated February 7th, 1881.

[Quein v. Smith.]

Quein testified with reference to the assignment of the mortgage held by Smith as follows: " This assignment to Mr. Smith was made in 1880 and the building association was in active operation at the time.    I had knowledge by hearsay from the solicitor and some of the directors, that there had been an assignment but they all said it would not hold water.    I did not know anything about the assignment at the time it was assigned.    I had no notice from Mr. Smith at any time. .When I was first told of the assignment and that it was good for nothing, I went down to the recorder's office to examine it, before I paid it off, but there was no assignment.    All who spoke to me about the assignment said at the same time it was good for nothing.    I did not say that I heard it that night.    I heard of it about six months after it was assigned.    They said that the mortgage was merely held for collateral."

On March 11th, 1881, a meeting of the board of directors was held, Quein being present, at which it was resolved that the "interest of all parties, stockholders as well as creditors would be best served by the affairs of the association passing into the hands of a receiver," and on April 7th, 1881, the annual meeting of the stockholders was held at which the appointment of a Receiver was determined upon.    It appeared further that the mortgage was not satisfied of record.

The defendant requested the court to charge :

1. That it was the duty of R. Rundle Smith, the assignee of the mortgage, to have placed his assignment of mortgage on record immediately, or else to have notified the defendant Quein of the assignment, and not having done so, the defendant was justified in settling with the building association, and the verdict should be for the defendant.

Answer.—" I decline this point as put.    It was the plaintiff's duty to give notice, but his failure to do so was at his own risk, but as Quein knew of it, this is not in question."

2. That if R. Rundle Smith permitted or authorized the building association after the assignment of the mortgage to go on and collect the monthly payments as before without notifing Quein of the assignment, then Quein was justified in settling with the building society, and the verdict should be for the defendant.

3. That under the agreement of R. R. Smith with the building association, they were authorized to settle with Quein, and his payment to the society discharges the mortgage, and the verdict should be for the defendant.

4. That the assignment of the mortgage to R. R. Smith did not deprive Quein of his right in the law and under the by-laws of the association of appropriating his stock toward the payment of his debt to the building society, and his settlement with them discharges the debt.

5. That the assignment of the mortgage was invalid as being beyond the authority of the association under the laws relating to building associations.

6. That the statement of members of the association to Quein that the mortgage had been assigned to R. R. Smith, but that it was invalid and inoperative, was not such notice to Quein as would affect him with knowledge of the assignment.

The court declined these points reserving, however, the questions of law contained in the 4th and 5th points. (1st to 6th assignments of error.)

The plaintiff presented, inter alia, the following points :—

" 1. The alleged payment by stock was invalid because the minutes show that the defendant had notice of the prior assignment to R. R. Smith, the plaintiff in this case." Affirmed.

" 3. It was incompetent for the mortgage of the defendant to be paid off in stock, because in by-laws, Article X, Section 1, as amended by the stockholders at meeting held February 5th, 1880, which reads as follows :—

" But payment of the value of stock so withdrawn shall only be due when the funds now by law applicable to the demands of withdrawing stockholders are sufficient to meet and liquidate the same, and then only in the order of the respective times of presentation of the notice of said withdrawals, which must have been presented in writing at a previous stated meeting, and have been then and there indorsed as to time and presentation by the secretary." Affirmed.

" 4. The defendant in the above case having defaulted in payment both of principal and interest on his loan, and seeking to apply the value of his stock on account of his indebtedness on his mortgage, is entitled to credit only for the amount paid in by him on account of said stock : Watkins *v.* Building and Loan Association, 1. Out., 514."

*Answer.*—I affirm this point. It appears to be the last decision, that the defendant is entitled to credit for the amount paid in on account of the stock given with the mortgage. (Seventh eighth and ninth assignments of error.)

" 5. The minutes of the association of February 7th, 1881, do not show any resolution of the association authorizing the settlement of Mr. Quein's mortgages by a payment to be made by him, in stock of the association, and no such resolution if passed would have been valid, because the association at this time was totally insolvent, which Mr. Quein as treasurer well knew."

*Answer.*—If you find that Mr. Quein knew the association was insolvent, then he had no right to do so. The assets must be divided equally, and it is very unbecoming for officers to

take advantage of their position to pay off in stock, when the association is insolvent.   (Tenth assignment of error.)

The court further charged:—

It is objected that the association had no power to assign this mortgage.   I affirm that they had the power, but reserve the question.

[Now, if you find from the evidence that Quein had information of an assignment, and that the orders, Nos. 300 and 301, to Smith were not paid, then your verdict should be for the plaintiff.]   (Eleventh assignment of error.)

Verdict for the plaintiff for $1,104.90, subject to the opinion of the court upon the points reserved.   Afterwards the court entered judgment for the plaintiff upon the verdict, whereupon defendant took this writ, assigning for error the judgment and answers of the court to above noted points and the above portion of the general charge.

*Thomas Greenbank*, for the plaintiff in error.—Sec. 2 of the By-Laws provides:   " Any stockholder who has received a loan may withdraw from the association on payment of the amount loaned, with all dues, interest and fines, when he or she shall receive the balance of his or her monthly contributions in the same manner as stockholders who have received no loan; or the stock of the association of any series will be taken for the payment of loans in its own or any other series, at its last annual full assessed value, together with the amount paid as dues since such assessment, without any calculation, allowance, or return of premium being made."

Quein was not in default, and so the rule in Watkins *v.* Building Association, 1 Out., 514, does not apply.   There was no evidence that Quein knew of the insolvency of the association on which to submit the question to the jury.

*John A. Clark* and *James W. Paul*, for the defendant in error.—Quein had been a defaulting stockholder for more than six months before the *sci. fa.* issued.   The association was organized under Act of 1859.   No power is given in that Act to pay a mortgage in stock: Sec. 2 of Act April 12th, 1859.   That Act requires thirty days' notice of intention to withdraw stock. Corporations in debt may pledge such property as they possess: St. Johns Church *v.* Steinmetz, 18 Pa. St., 273; Dana *v.* Bank of U. S., 5 W. & S., 223.   That the assignment was for collateral security does not prevent judgment:  86 Pa. St., 116.

Mr. Justice TRUNKEY delivered the opinion of the court, March 16th, 1885.

Smith and Christian having withdrawn their stock, each

received from the association an order for $2490, dated April 3d, 1879. Christian placed his order in the hands of Smith for collection. After Smith had threatened to sue unless secured, the board of directors agreed to accede to his demand, and on May 10th, 1880, the association assigned to him as collateral security four mortgages, including the one in suit, and stipulated that all the income derived from said four mortgages, together with one half of all the income derived from any other source, should be wholly applied to the liquidation of orders prior in date to those held by Smith until all should be paid, and then to the liquidation of those he held until fully paid; and that the treasurer of said association should furnish monthly statements showing in detail the receipts and disbursements, and how the agreement was being carried out.

It is plain that the terms of the assignment involved no change in the duties of the mortgagors—by necessary implication the mortgagee was to receive the payments. The assignee was entitled to monthly statements from the mortgagee showing how the agreement was being performed. It is immaterial whether Smith placed the assignment on record, or caused notice thereof to be given to the defendant. If the defendant had knowledge of it, he knew of its conditions and stipulations. The assignee did not notify him to stop payments to the mortgagee, and he is entitled to credit for whatever payments that were properly made. It follows that the first and sixth assignments of error need not be noted.

If the defendant fairly and within the provisions of the charter and by-laws, satisfied the mortgage by payment of stock, the terms of the prior assignment to Smith do not render said payment invalid, if the minutes do show that the defendant had knowledge of the assignment. Hence the seventh and eleventh specifications of error must be sustained. The instructions set out in those specifications required a finding for the plaintiff, on the ground that if the defendant had information of the assignment, under no circumstances would payment in stock be valid.

Quein was elected Treasurer of the Association on January 6th, 1881. Before his attempted settlement and satisfaction of the mortgage he knew it was assigned to Smith. He was a director and was present, March 11th, 1881, when the board resolved that it would best serve the interests of all parties for the affairs of the Association to pass into the hands of a Receiver. Three months before the settlement he bought stock at twenty-five per centum less than par. When he applied to pay the mortgage with stock he knew there were a number of withdrawing stockholders who had not been paid, that orders were outstanding, and that Smith's turn had not come. In

the minutes and Quein's own testimony is ample evidence that he knew the Association was insolvent, and the court committed no error in the answer to the plaintiff's fifth point. Under such circumstances an officer could not discharge his indebtedness to the Association with stock for which he had subscribed, nor with stock he had bought from others at a discount. When the officers learned that the Association was without sufficient means for payment of its debts, they could not lawfully appropriate its property to themselves to the prejudice of creditors. The fact as to Quein's knowledge of the insolvency was rightly submitted to the jury with proper instruction.

This action is for recovery of the mortgage debt. The receiver was a witness and knows of the proceeding. If the assignee is not entitled to the money by virtue of the assignment, by a proper proceeding the suit can be marked for use of the party entitled. This is not the case of an absolute sale or transfer of a mortgage or other evidence of debt. Such an assignment as this, if not a safe security for the assignee, is prima facie valid, for it is to secure an existing debt, and upon conditions not prejudicial to the Association or to other persons. On its face the assignee is entitled to no money until prior orders are fully paid. We are not convinced that the court erred in refusing to charge that the assignment was invalid. A solvent building association may appropriate the proceeds of a debt owing to itself in payment of a debt it owes. The Act of 1859 provided that at no time should more than half of the funds in the treasury be applicable to the demands of withdrawing stockholders without consent of the board of directors. In this proceeding it need not be determined whether the assent of the board was illegally given to the assignment.

If the defendant prior to the assignment to Smith, had the right to appropriate his stock to payment of the mortgage debt, the assignment did not deprive him of that right. But whether assigned or not, after insolvency of the company, he could not discharge the debt by appropriating thereto his stock, and the defendant's second, third and fourth points were rightly refused. Had those points been affirmed the jury must have found for the defendant, even if they were satisfied he knew of the insolvency of the Association when he paid the stock.

The settlement was made February 7th, 1881, and the plaintiff concedes that all monthly dues were paid to that date. A receiver was appointed by the court on July 29th, 1881. No payments were made after February 7th, 1881, and the court affirmed that the defendant having defaulted in payment of principal and interest on the loan, was entitled only to credit

for the amount paid in by him on account of his stock. It is contended by the defendant that he had properly paid in full, and he complains of the affirmance of the plaintiff's fourth point which assumes he was a defaulter. If he colluded with other officers to procure a wrongful satisfaction of the mortgage, he may be treated as a defaulter. The question of fact should have been submitted to the jury, not assumed.

The plaintiff has shown no reason for affirmance of his third point, namely, "It was incompetent for the mortgage of the defendant to be paid off in stock, because in by-laws, Article X., section 1, as amended by the stockholders at meeting held February 5th, 1880, which reads as follows:" setting out the amendment. That section and amendment relate to stockholders who had not received a loan. The second section of same article relates to any stockholder who has received a loan, and provides, among other things, that the stock of the Association will be taken for the payment of loans. The second, not the first, appears to be the section under which the defendant attempted to satisfy his indebtedness by delivery of stock.

Judgment reversed and venire facias de novo awarded.